**Nos. 24-5174, 24-5130, 24-5135**

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

ENRIQUE DIAZ,
*Plaintiff-Appellant,*

v.

OREGON DEPARTMENT OF CORRECTIONS, et al.,
*Defendant-Appellee,*

D. LOYA,
*Defendant-Appellee,*

SPELMAN,
*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the District of Oregon,
Nos. 2:22-cv-1288, 2:22-cv-01311, 2:22-cv-01395
The Honorable Michael H. Simon, United States District Judge

---

### PLAINTIFF-APPELLANT'S OPENING BRIEF

---

Patrick Ntchobo
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Telephone: (415) 212-9300
Email: pntchobo@edelson.com

*Appointed Counsel for Plaintiff-Appellant Enrique Diaz*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................ i

TABLE OF AUTHORITIES ................................................ ii

INTRODUCTION ............................................................... 1

JURISDICTIONAL STATEMENT ..................................... 2

STATEMENT OF THE ISSUES ......................................... 3

STATEMENT OF THE CASE ............................................. 3

SUMMARY OF THE ARGUMENT ..................................... 9

STANDARD OF REVIEW .................................................. 11

ARGUMENT ....................................................................... 11

I.    Whether Diaz Exhausted His Administrative Remedies Is a Factual Question that Cannot Be Resolved at Summary Judgment ................................................................... 11

     A.    The PLRA Does Not Require Prisoners to Exhaust Remedies that Are Not Available .................................. 12

     B.    Diaz Set Forth Evidence Sufficient to Permit a Factfinder to Conclude that Administrative Remedies Were Effectively Unavailable to Him ........................... 17

II.    The Continuing Violations Doctrine Renders Diaz's Pattern-and-Practice Claim Fully Exhausted ...................... 21

CONCLUSION .................................................................... 26

CERTIFICATE OF COMPLIANCE ................................... 27

i

# TABLE OF AUTHORITIES

## Cases

*Albino v. Baca*,
    747 F.3d 1162 (9th Cir. 2014)............................ 11, 12, 16, 19, 21

*Andres v. Marshall*,
    867 F.3d 1076 (9th Cir. 2017)....................................................15

*Booth v. Churner*,
    532 U.S. 731 (2001) ................................................................14

*Diaz v. Loya*,
    No. 22-35889,
    2023 WL 2639299 (9th Cir. Mar. 21, 2023)...................... 1, 7, 24

*Eaton v. Blewett*,
    50 F.4th 1240 (9th Cir. 2022) ............................ 12, 13, 14, 15, 17

*Fordley v. Lizarraga*,
    18 F.4th 344 (9th Cir. 2021) ........................................ 14, 15, 25

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ................................................................22

*Howard v. Waide*,
    534 F.3d 1227 (10th Cir. 2008)................................................23

*Johnson v. Johnson*,
    385 F.3d 503 (5th Cir. 2004)..............................................22, 23

*Johnson v. Killian*,
    680 F.3d 234 (2d Cir. 2012) ....................................................22

*Jones v. Bock*,
    549 U.S. 199 (2007) ................................................................13

*Marella v. Terhune,*
568 F.3d 1024 (9th Cir. 2009)..........................................15, 16, 19

*McBride v. Lopez,*
807 F.3d 982 (9th Cir. 2015)....................................................12

*Morgan v. Trierweiler,*
67 F.4th 362 (6th Cir. 2023)...........................................21, 23, 24

*Nunez v. Duncan,*
591 F.3d 1217 (9th Cir. 2010)...............................................16, 19

*Parzyck v. Prison Health Servs. Inc.,*
627 F.3d 1215 (11th Cir. 2010)..................................................23

*Perttu v. Richards,*
145 S. Ct. 1793 (2025) .........................................................12, 13

*Porter v. Nussle,*
534 U.S. 516 (2002) ..................................................................12

*Ross v. Blake,*
578 U.S. 632 (2016) .............................................9, 14, 15, 18, 25

*Sheltra v. Christensen,*
124 F.4th 1195 (9th Cir. 2024) ...........................2, 10, 22, 23, 25

*Siggers v. Campbell,*
652 F.3d 681 (6th Cir. 2011)......................................................24

*Turley v. Rednour,*
729 F.3d 645 (7th Cir. 2013)................................................23, 24

*Wilcox v. Brown,*
877 F.3d 161 (4th Cir. 2017).....................................................22

*Wilhelm v. Rotman,*
680 F.3d 1113 (9th Cir. 2012).................................................1, 7

iii

*Woodford v. Ngo*,
    548 U.S. 81 (2006) ....................................................................13

## Statutes

28 U.S.C. § 1291...........................................................................3

28 U.S.C. § 1331...........................................................................3

42 U.S.C. § 1983.............................................................2, 3, 7, 21

42 U.S.C. § 1997e(a)...........................................................3, 13, 21

## Other Authorities

Or. Admin. R. 291-006-0005 .......................................................5

Or. Admin. R. 291-109-0100 .......................................................5

Or. Admin. R. 291-109-0205 .......................................................6

Or. Admin. R. 291-109-0215(1)-(2) .............................................6

Or. Admin. R. 291-109-0220(4) ..............................................5, 17

## INTRODUCTION

This Court has already recognized that Plaintiff-Appellant Enrique Diaz's core allegations—that Oregon Department of Corrections ("ODOC") officers repeatedly called Diaz a "spic"—"suggest a pattern and practice of racial harassment" and are sufficient to be heard in federal court. *See Diaz v. Loya*, No. 22-35889, 2023 WL 2639299, at *1 (9th Cir. Mar. 21, 2023) (citing *Wilhelm v. Rotman*, 680 F.3d 1113, 1116 (9th Cir. 2012)). But over two years later, Diaz's claims have not been on the merits. Instead, the district court has now granted summary judgment on the ground that Diaz failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act. This Court should reverse for the second time.

First, Diaz presented sufficient evidence of a factual dispute regarding exhaustion to preclude summary judgment. The administrative process required Diaz to identify the officer who first called him a racial slur by name. But Diaz presented facts tending to show that ODOC correctional staff prevented him from doing so, including that ODOC staff ignored him for months, the officer was not wearing his name tag and, when asked, gave a false name. This

1

evidence is sufficient to permit a factfinder to conclude that no administrative remedy was available to Diaz and therefore precludes summary judgment.

Second, despite this Court's instruction to "liberally construe" Diaz's 42 U.S.C. § 1983 claim as "collectively" suggesting "a pattern and practice of racial harassment," the district court separately assessed whether Diaz specifically exhausted his remedies for every separate act of racial harassment he experienced. That misses the point of Diaz's lawsuit, which challenges a *pattern and practice* of racial harassment, not merely one occurrence. Because Diaz's claim ultimately challenges a single course of unconstitutional conduct, the district court should have applied the continuing violations doctrine to Diaz's entire claim of racial harassment. *See Sheltra v. Christensen*, 124 F.4th 1195, 1201 (9th Cir. 2024).

For these reasons, this Court should again reverse and allow Diaz's racial discrimination claim to proceed on its merits.

## JURISDICTIONAL STATEMENT

Enrique Diaz appeals from the district court's dismissal of his civil rights action for failure to exhaust administrative remedies as required

by the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The district court had jurisdiction pursuant to 28 U.S.C. § 1331 because Diaz alleged a claim arising under the Fourteenth Amendment to the United States Constitution and a federal statute, 42 U.S.C. § 1983. This Court has jurisdiction under 28 U.S.C. § 1291 because Diaz appeals the district court's final judgment that disposed of all claims against all parties. That judgment was entered on July 30, 2024, and Diaz timely filed his notice of appeal on August 20, 2024.

Diaz is in custody. His earliest release date is June 2, 2027.

## STATEMENT OF THE ISSUES

1. Whether Diaz raised genuine disputes of material fact as to the availability of ODOC's grievance system following the May 22 incident.

2. Whether the continuing violations doctrine renders Diaz's entire claim exhausted.

## STATEMENT OF THE CASE

### A.

Enrique Diaz is an adult in the custody of the Oregon Department of Corrections. ER-13. On May 22, 2022, he was serving his sentence at

3

the Snake River Correctional Institution ("SRCI") in eastern Oregon, on the Idaho border, when a correctional officer called him a "spic" ("May 22 incident"). *See* ER-32–33. For three months, Diaz tried to identify the officer who called him the racial slur. *See* ER-29. Diaz stated in a declaration that "it was hard to acquire" the officer's name during that time because Diaz "was being ignored" and the officer did not wear his name tag. *See id.*

Diaz never learned the officer's name. When Diaz was finally able to ask the officer directly for his name, the man responded, "J. Douglas," at least as far as Diaz could understand. *See id.* But that was not true. ODOC's counsel in this litigation has admitted that "[n]o person with the name 'J. Douglas' worked for ODOC at the times relevant to Plaintiff's claim and counsel for Defendants has been unable to identify this person." ER-206.

Several weeks later, on August 4, a different corrections officer called Diaz a "spic" after breathing on his dinner tray ("August 4 incident"). *See* ER-33. Diaz was able to identify this man as Officer Loya. *See id.* About three weeks after that, on August 26, yet another

4

officer identified as Officer Spelman called Diaz a "spic" and a "retard," ("August 26 incident"). *See id.*

To report the officers for their misconduct and racial slurs, Diaz was required to follow a grievance process set out by Oregon law. *See, e.g.*, Or. Admin. R. 291-006-0005, Or. Admin. R. 291-109-0100.[1] Diaz's attempts to report the officers implicated three such regulations. The first is a content limitation: Oregon law required him to include in his grievance "a complete description of the incident, issue, or action being grieved" including "the individual responsible for the incident, issue, or action." Or. Admin. R. 291-109-0220(4). ODOC has in fact returned several of Diaz's complaints with the following note: **"Need to know the name of the sergeant."** ER-68, 72 (emphases in original).

---

[1] Oregon law contains different but parallel systems for filing and processing inmates' "grievances" and "discrimination complaints." Specifically, the "Grievance Review System" is laid out in Oregon Administrative Rules Chapter 291, Division 109, while the "Discrimination Complaint Review System" is in Chapter 291, Division 6. *See* ER-33–35. Neither ODOC nor the district court cited distinctions between grievances and discrimination complaints as a basis for decision, so the distinctions are not relevant here.

5

The second is a timing limitation. "Grievances must be received by the institution grievance coordinator within 14 calendar days from the date of the incident or issue being grieved unless the adult in custody can satisfactorily demonstrate why the grievance could not be timely filed." Or. Admin. R. 291-109-0205. Untimely grievances are "denied and returned to the adult in custody with a statement of the rule." *Id.* And the third is a frequency limitation. An adult in custody may not have more than four active complaints at any time and may not submit more than four complaints per calendar month. *See* Or. Admin. R. 291-109-0215(1)-(2).

ODOC denied Diaz's attempts to file grievances against the officers on procedural grounds. As to the initial May 22 incident, Diaz did not submit his grievance until August 18, at which point ODOC struck his grievance as untimely and in excess of his monthly and active limits. *See* ER-105–106. Diaz did not file a grievance against Officer Loya for the August 4 incident, though he did file a grievance against Officer Spelman for the August 26 incident. ER-37. ODOC denied the third grievance for similar reasons as it denied the first: it determined that Diaz had filed it "at a time when he had more than four active

6

complaints and during a month in which he had already filed in excess of four complaints." *Id.* ODOC therefore did not investigate any of the incidents.

## B.

Diaz turned to federal court. He filed three 42 U.S.C. § 1983 lawsuits *pro se* in August 2022, in which he alleged that both ODOC and the three officers who called him racial slurs violated his rights to equal protection under the Fifth and Fourteenth Amendments. *See* ER-13, 283. The district court issued separate but nearly identical orders dismissing all three lawsuits on the same ground: the court considered Diaz's allegations separately and held that each of the officers' use of racial slurs "alone does not give rise to an equal protection claim under § 1983." *See* ER-225–26, 230–31, 235–36.

This Court reversed. "When considered collectively," this Court held, "Diaz's allegations suggest a pattern and practice of racial harassment," and "liberally construed, Diaz's allegations 'are sufficient to warrant ordering defendant to file an answer.'" *See Loya*, 2023 WL 2639299, at *1 (citing *Wilhelm*, 680 F.3d at 1116). This Court instructed the district court to "consider processing [Diaz's] cases together" on

7

remand. *Id.* Back below, the magistrate judge consolidated the cases. *See* ER-214–16.

The consolidated defendants then moved for summary judgment on the ground that Diaz failed to exhaust his administrative remedies before filing his lawsuits as required by the Prison Litigation Reform Act. *See* ER-13. The consolidated defendants argued that Diaz (1) failed to exhaust the August 4 incident because he never filed a grievance about it and (2) failed to exhaust the May 22 and August 26 incidents because by the time he filed grievances about them in late August, he had more than four active complaints and had already filed more than four complaints that month. *See* ER-16–17, 211.

Diaz argued in response that he was prevented from grieving the May 22 incident for months because he could not identify the officer who called him the racial slur. *See* ER-29. Diaz asked the district court to excuse the timeliness of the May 22 incident on this ground. *See* ER-23.

The magistrate judge held that Diaz failed to exhaust his administrative remedies and granted the consolidated defendants' motion for summary judgment. ER-13. The magistrate judge

8

acknowledged that Diaz had "explained that his grievance for the May 22 incident was three months late because he did not know the name of the corrections officer, who was not wearing a name tag." ER-17. But the judge nevertheless reasoned that Diaz "offer[ed] no opposition in response to defendants' argument that he failed to exhaust his administrative remedies because he had four active grievances pending and had filed four grievances in one month." ER-18.

The district court adopted the magistrate judge's findings and recommendation, dismissed the cases, and ultimately entered judgment on July 30, 2024. ER-11. Diaz filed this timely appeal on August 20, 2024. ER-281, 287. This Court determined that "appointment of pro bono counsel would benefit the court's review in these appeals" and subsequently appointed pro bono counsel. *See* ER-280.

## SUMMARY OF THE ARGUMENT

Two well-recognized exceptions to PLRA exhaustion preclude summary judgment in this case. First, "the PLRA contains its own, textual exception to mandatory exhaustion." *Ross v. Blake*, 578 U.S. 632, 642 (2016). The plain text of the statute makes clear that inmates

"must exhaust *available* remedies, but need not exhaust *unavailable* ones." *Id.* (emphasis added) (citation omitted).

Here, Diaz raised disputed questions of fact as to the availability of ODOC's grievance system following the May 22 incident. Oregon law required him to identify the officer who called him racial slurs, but Diaz presented facts tending to show that ODOC correctional staff prevented him from doing so. Those disputed questions of fact should have precluded summary judgment, but the district court ignored them. Its order granting summary judgment cannot stand.

The second applicable exception to PLRA exhaustion is the continuing violations doctrine. When an inmate's federal claim is premised on a "single continuing harm or course of conduct," the continuing violations doctrine treats unexhausted events occurring *after* an inmate's first grievance "as nonetheless exhausted." *Sheltra*, 124 F.4th at 1201. The exception applies here because Diaz's claim alleges a pattern and practice of racial harassment and is therefore premised on a "single continuing harm." *Id.* Should a factfinder conclude that Diaz exhausted the May 22 incident because ODOC's grievance system was effectively unavailable to him, then the subsequent August 4 and

10

August 26 incidents would also be exhausted because they are all part of a single course of unconstitutional conduct. Despite this Court's clear instruction to "liberally construe" Diaz's claim as "collectively" suggesting "a pattern and practice of racial harassment," the district court assessed whether each incident was specifically exhausted instead of whether Diaz's claim was collectively exhausted. This was also error.

For these reasons, the Court should reverse the district court's grant of summary judgment and remand so Diaz can litigate the merits of his racial discrimination claim.

## STANDARD OF REVIEW

This Court reviews *de novo* both the district court's interpretation of the PLRA's exhaustion requirement and its determination that a prisoner failed to exhaust administrative remedies. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc). This Court similarly reviews the district court's grant of summary judgment *de novo*. *Id.*

11

# ARGUMENT

## I. Whether Diaz Exhausted His Administrative Remedies Is a Factual Question that Cannot Be Resolved at Summary Judgment.

The core of the district court's summary judgment ruling depends on the factual conclusion that Diaz failed to exhaust administrative remedies that were available to him. That the remedies were, in fact, available *to him* is an indispensable part of the district court's holding because, as a matter of law, "failure to exhaust a remedy that is effectively unavailable does not bar a claim from being heard in federal court." *Eaton v. Blewett*, 50 F.4th 1240, 1245 (9th Cir. 2022) (citing *McBride v. Lopez*, 807 F.3d 982, 986 (9th Cir. 2015)). Here, a finder of fact could determine that Diaz did not have a remedy available to him, and summary judgment was therefore improper. *See Albino*, 747 F.3d at 1169 (holding that "[i]f there is a genuine dispute about material facts" with respect to exhaustion, then "summary judgment will not be granted") (en banc).

### A. The PLRA Does Not Require Prisoners to Exhaust Remedies that Are Not Available.

The Prison Litigation Reform Act of 1995 requires prisoners with complaints about prison conditions to exhaust available grievance

procedures before bringing suit in federal court. *Perttu v. Richards*, 145 S. Ct. 1793, 1798 (2025). Congress enacted the law to "reduce the quantity and improve the quality of prisoner suits." *Id.* (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Its exhaustion provision states: "No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The PLRA's exhaustion requirement requires "proper exhaustion of available prison grievance procedures," which means that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules as a precondition to bringing suit in federal court." *Perttu*, 145 S. Ct. at 1798 (citation modified) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006)).

But at the same time, "[o]ur legal system [is] committed to guaranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to law." *Jones v. Bock*, 549 U.S. 199, 203 (2007). This Court has accordingly "previously emphasized" that the "PLRA's exhaustion requirement extends only to *available*

13

administrative remedies, and a failure to exhaust a remedy that is effectively unavailable does not bar a claim from being heard in federal court." *Eaton*, 50 F.4th at 1245 (emphasis in original) (citations omitted).

The PLRA's exhaustion requirement, moreover, is an affirmative defense. *Jones*, 549 U.S. at 216. Appellees—not Diaz—bear the burden of showing that the administrative process was available to Diaz and that he ultimately failed to exhaust it. *Fordley v. Lizarraga*, 18 F.4th 344, 350–51 (9th Cir. 2021) (citations omitted).

"Once the defendant shows that such a remedy was generally available, the burden shifts to the inmate to show that something in his particular case made the generally available administrative remedies effectively unavailable to him." *Id.* "Because the failure to exhaust is an affirmative defense that defendants must plead and prove, the ultimate burden of proving that the inmate has not exhausted his claims remains with the defendants." *Id.* Here, the district court erred by ignoring disputed questions of fact about the availability of ODOC's grievance system following the May 22 incident.

14

The Supreme Court has explained that in the context of exhaustion, "available" means "capable of use for the accomplishment of a purpose, and that which is accessible or may be obtained." *Ross*, 578 U.S. at 642 (citation modified) (quoting *Booth v. Churner*, 532 U.S. 731, 737–38 (2001)). The availability standard is "pragmatic" and accounts for the "real-world workings of prison grievance systems." *Eaton*, 50 F.4th at 1245 (citation modified) (citing *Ross*, 578 U.S. at 643).

In *Ross*, the Supreme Court identified three examples of unavailable administrative remedies: (1) when the grievance system "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the system is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 44.

*Ross*'s list, moreover, is "non-exhaustive." *Andres v. Marshall*, 867 F.3d 1076, 1078 (9th Cir. 2017). This Court has recognized additional "circumstances that render administrative remedies unavailable, and on more than one occasion ha[s] found administrative processes

15

effectively unavailable even though they exist on the books." *Fordley*, 18 F.4th at 351–52 (citation modified) (collecting cases).

Most relevant here, this Court has found administrative process unavailable "in cases where inmates were unable to access information about the administrative grievance process." *Eaton*, 50 F.4th at 1245 (collecting cases). In *Marella*, for example, an inmate claimed he "was unable to file his grievance timely because he did not have access to the necessary forms and he did not have the ability to complete them during the fifteen-day filing period." *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) (per curiam). This Court held that the district court "erred in concluding that, as a matter of law, no exceptions to the timely filing requirement exist" and directed the court "to make factual findings as to whether Marella had access to the necessary forms and whether he had the ability to file." *Id.*

Similarly, in *Albino*, this Court sitting en banc concluded that a prison's administrative remedies were unavailable to a prisoner who did not have access to a manual describing the grievance process. *See Albino*, 747 F.3d at 1175–77 (en banc). And in *Nunez v. Duncan*, 591 F.3d 1217 (9th Cir. 2010), a prison's administrative remedies became

16

unavailable when the warden incorrectly implied to a prisoner that he

needed access to a nearly unobtainable prison policy in order to bring a

timely administrative appeal. *Id.* at 1226. It made no difference in

*Nunez* that the factual record did not "suggest bad faith or deliberate

obstruction by prison officials." *See id.* The throughline in each case is

that the prisons' administrative remedies were effectively unavailable

because, in practice, the prisoners could not access the information

necessary to pursue their grievances. *Eaton*, 50 F.4th at 1245.

> **B.    Diaz Set Forth Evidence Sufficient to Permit a
> Factfinder to Conclude that Administrative Remedies
> Were Effectively Unavailable to Him.**

So too here. Diaz has shown that he could not access the

information necessary to timely pursue his grievance for the May 22

incident. Oregon law and ODOC practice required Diaz to identify in his

grievance "the individual responsible for the incident, issue, or action."

Or. Admin. R. 291-109-0220(4). Indeed, ODOC has returned several of

Diaz's complaints with the following note: **"Need to know the name

of the sergeant."** ER-68, 72 (emphases in original). Diaz argued below,

however, that for nearly three months he was prevented from learning

the identity of the officer who called him a racial slur on May 22. *See*

ER-23, 29. In so doing ODOC rendered its grievance system effectively unavailable to Diaz.

Consider the record below. Diaz submitted evidence that "it was hard to acquire" the officer's name who called him a racial slur because (1) he "was being ignored" by ODOC correctional staff during this period; and (2) the officer was not wearing his name tag. *See* ER-29. It is also undisputed that, despite Diaz's months-long effort, he in fact never obtained the officer's name. Diaz came to believe that the officer who called him a "spic" was named "J. Douglas" based on what that officer had told him, *see id.*, but ODOC's counsel in this litigation has admitted that "[n]o person with the name 'J. Douglas' worked for ODOC at the times relevant to Plaintiff's claim." ER-206. Even "counsel for Defendants has been unable to identify this person." *Id.* Taken together and viewed in the light most favorable to Diaz, the evidence shows that ODOC staff ignored Diaz for months, obscured an officer's name tag, gave him incorrect information, and ultimately made it impossible for Diaz to identify the man who called him a racial slur.

On this record, a reasonable factfinder could conclude that ODOC correctional staff "thwart[ed]" Diaz's ability to identify the officer

responsible for the May 22 incident through "machination [or] misrepresentation." *Ross*, 578 U.S. at 643–44. ODOC thereby forced Diaz to file an untimely complaint months later in August, during a month when he had already exceeded the monthly and active complaint limits. ER-37. So genuine disputes of material fact exist as to whether ODOC correctional staff took steps to prevent Diaz from obtaining the information necessary to file a timely grievance immediately following the May 22 incident. And any such steps would excuse Diaz's failure to exhaust the May 22 incident because remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44.

At minimum, as in *Marella*, genuine disputes of fact exist as to whether Diaz had the information necessary—here, the officer's name— to file a timely grievance immediately following the May 22 incident. *See Marella*, 568 F.3d at 1027. A reasonable factfinder could conclude that Diaz did not have such information even if unconvinced that ODOC correctional staff acted in bad faith. *See Nunez*, 591 F.3d at 1226 (excusing a prisoner's untimely grievance even when the record did not

"suggest bad faith or deliberate obstruction by prison officials"). Genuine questions of fact therefore abound.

This Court has made clear that "[i]f there is a genuine dispute about material facts" with respect to exhaustion, then "summary judgment will not be granted." *Albino*, 747 F.3d at 1169 (en banc). Because Diaz raised disputed questions of fact as to the availability of ODOC's grievance system following the May 22 incident, summary judgment is inappropriate.

The lower court erred by ignoring disputed questions of fact as to the availability of ODOC's grievance system following the May 22 incident. The magistrate judge concluded that Diaz "offer[ed] no opposition in response to defendants' argument that he failed to exhaust his administrative remedies because he had four active grievances pending and had filed four grievances in one month." ER-18. That is wrong.

The magistrate judge and district court failed to realize that Diaz *had* raised a central opposition to Appellees' arguments: Diaz argued and showed that ODOC prevented him from timely grieving the May 22 incident, which would have rendered the monthly and active limit on

20

complaints in August irrelevant for that incident. The magistrate judge acknowledged that Diaz "explained that his grievance for the May 22, 2022 incident was three months late because he did not know the name of the corrections officer, who was not wearing a name tag." ER-17. But the magistrate judge did not assess whether and to what extent Diaz's inability to access the first officer's name affected Diaz's ability to timely grieve the May 22 incident. This was reversible error.

Because there are genuine disputes of material facts with respect to Appellees' exhaustion defense, this Court should reverse the grant of summary judgment. *Albino*, 747 F.3d at 1169 (en banc).

## II. The Continuing Violations Doctrine Renders Diaz's Pattern-and-Practice Claim Fully Exhausted.

The district court made a second analytical error. It analyzed whether Diaz had exhausted his federal 42 U.S.C. § 1983 claim by considering the incidents of racial harassment as separate and distinct claims. But that is not Diaz's federal claim. Fairly construed, his complaint challenges a singular course of unconstitutional conduct: a pattern and practice of ODOC staff subjecting him to the exact same racial slur. The district court accordingly should have applied the

21

continuing violations doctrine to Diaz's entire claim of racial harassment.

Exhaustion depends on the alleged claim. 42 U.S.C. § 1997e requires exhaustion before bringing an "action," so the analytical inquiry is whether the inmate exhausted the specific federal claim at issue. *See Morgan v. Trierweiler*, 67 F.4th 362, 371 (6th Cir. 2023) ("42 U.S.C. § 1997e requires exhaustion before bringing an 'action.' At issue here is Morgan's free exercise claim, which he raised by prison grievance."). And when a federal claim is premised on a "single continuing harm or a single course of conduct," the continuing violations doctrine treats unexhausted events occurring *after* an inmate's first grievance "as nonetheless exhausted." *Sheltra*, 124 F.4th at 1201. In other words, "under the continuing-violations doctrine, a properly exhausted prison grievance asserting one, continuing harm or a single course of conduct can exhaust events arising out of the same alleged violation that occur after the grievance was made." *Id.* at 1203.

The Supreme Court first recognized the doctrine in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81 (1982), to extend a Fair Housing Act statute of limitations under the reasoning that where a

22

violation is ongoing, the limitations period begins anew each day the violation continues. But every circuit to have considered the question—including this one—agrees that the doctrine also applies in the context of exhaustion of administrative remedies under the PLRA. *Sheltra*, 124 F.4th at 1201 (collecting cases).[2] The theory underlying the continuing violations doctrine is that "[i]n order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).

In *Sheltra*, for example, an inmate had filed a grievance in March complaining to prison officials about threats that he received, he but did not separately grieve a subsequent attack in April. 124 F.4th at 1197. When the inmate filed an Eighth Amendment claim based on the prison's failure to protect him from the unexhausted attack, this Court found the inmate's claim nonetheless exhausted because the events in

---

[2] *See, e.g.*, *Johnson v. Killian*, 680 F.3d 234, 238–39 (2d Cir. 2012); *Wilcox v. Brown*, 877 F.3d 161, 167 n.4 (4th Cir. 2017); *Johnson v. Johnson*, 385 F.3d 503, 521 (5th Cir. 2004); *Morgan*, 67 F.4th at 370–71; *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013); *Howard v. Waide*, 534 F.3d 1227, 1244 (10th Cir. 2008); *Parzyck v. Prison Health Servs. Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010).

his claim "all related to a singular ongoing risk of harm." *See id.* at 1203. Similarly, in *Morgan*, when an inmate brought a First Amendment Free Exercise claim challenging the prison's denial of his Halal meals, the Sixth Circuit rejected the defendants' argument that each meal denial was a discrete event that required a separate grievance. 67 F.4th at 370–71. The court instead recognized that the inmate's claim "reflect[ed] an attempt to resolve a single course of unconstitutional conduct." *Id.* at 368, 370–71.

By contrast, the Sixth Circuit in *Siggers* declined to apply the continuing violations doctrine to a case involving the denial of inmate mail where the inmate had not claimed "he had been denied mail consistently" but rather challenged "certain pieces of mail rejected under different facts and policies." *Morgan*, F.4th at 370 (citing *Siggers v. Campbell*, 652 F.3d 681, 693 (6th Cir. 2011)).

The continuing violations doctrine applies to Diaz's pattern-and-practice claim against ODOC because of the nature of his claim. Diaz sued both ODOC as an entity and each of the three ODOC officers for the same course of conduct: ODOC correctional staff engaged in a *pattern and practice* of subjecting him to the exact same racial slur. *See*

24

ER-13, 283. Because Diaz had to frame his complaints without the benefit of a lawyer, this Court instructed the district court to "liberally construe" Diaz's claim as "collectively" suggesting "a pattern and practice of racial harassment." *Loya*, 2023 WL 2639299, at *1. Framed that way—which is the law of the case—Diaz's claim necessarily implicates the continuing violations doctrine because it is premised on a "single continuing harm or a single course of conduct." *Sheltra*, 124 F.4th at 1201.

It follows that any unexhausted events in the pattern occurring *after* Diaz's first grievance are "nonetheless exhausted." *Id.* That is, should a factfinder conclude that Diaz in fact exhausted the initial May 22 incident because ODOC correctional staff "thwart[ed]" his ability to identify the officer responsible, *Ross*, 578 U.S. at 643–44, then any subsequent incidents in the continuing violation—here the August 4 and August 22 incidents—would also be exhausted. *See, e.g.*, *Fordley*, 18 F.4th at 355 (recognizing in the context an unavailable remedy that "[o]ur court has also expressly recognized that once an administrative remedy is exhausted, a claimant need not do more.").

25

Despite this Court's clear instruction to "liberally construe" Diaz's claim as "collectively" suggesting "a pattern and practice of racial harassment," the district court treated Diaz's claims as separate lawsuits against separate defendants and assessed whether each incident was specifically grieved. This was error. Should this Court reverse the district court's grant of summary judgment as to the May 22 incident, it should instruct the district court on remand to apply the continuing violations doctrine to Diaz's entire claim.

## CONCLUSION

This Court should reverse the district court's grant of summary judgment as to the May 22 incident and instruct the district court on remand to apply the continuing violations doctrine to Diaz's entire claim.

Dated: July 30, 2025      Respectfully submitted,

ENRIQUE DIAZ,

By: s/ Patrick Ntchobo
*Appointed Counsel for Plaintiff-Appellant Enrique Diaz*

Patrick Ntchobo
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111

Telephone: (415) 212-9300
Email: pntchobo@edelson.com

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 24-5174, 24-5130, 24-5135

I am the attorney or self-represented party.

**This brief contains** 4,761 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - [ ] it is a joint brief submitted by separately represented parties.
  - [ ] a party or parties are filing a single brief in response to multiple briefs.
  - [ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated _____.

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Patrick Ntchobo | **Date** | 07/30/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**      *Rev. 12/01/22*